EX PARTE NINA RUTH ELMORE MORRIS

No. 34,127. December 6, 1961

500

*Jerry Murad,* Fort Worth, for relator.

*Leon Douglas,* State's Attorney, Austin, for the state.

McDONALD, Judge.

This original habeas corpus proceeding is a sequel to Ex parte Nina Ruth Morris, 342 S.W. 2d 558, and a sequel to Ex parte Nina Ruth Elmore Morris, Supreme Court of Texas, 349 S.W. 2d 99.

On July 10, 1959, in Cause No. 13140-C, 153rd Judicial District of Tarrant County, Texas, Leonard's, a Fort Worth department store, filed suit against James A. Elmore and Nina Ruth Elmore Morris for debt on a promissory note and for foreclosure of a chattel mortgage on certain personal property, including a deep freeze. Nina Ruth Elmore Morris, relator, and her former husband had been held in contempt for failure to deliver the deep freeze and the other personal property, to the sheriff, as previously directed by the 153rd District Court. At the contempt hearing held on August 16, 1960, relator testified that she did not know where the property was located and had not had the same in her possession for almost two years. The Supreme Court discharged both parties on the ground that there was no evidence to authorize a finding that they were in possession of the property and able to comply with the delivery order. Ex parte Morris, 342 S.W. 2d 558.

While that proceeding was pending before the Supreme Court, whose opinion, which was rendered on February 1, 1961, discharged relator in the above styled case, and within the fifteen-day period provided under the Rules of Civil Procedure to request a motion for rehearing, the district judge orally ordered a member of the Fort Worth bar, Alford J. Russell, as an officer of that court, who is also shown by the record to be attorney for the Leonard's Department Store of Fort Worth, the plaintiff in the original suit for possession of the deep freeze, to conduct an investigation and initiate an inquiry into all of the facts pertaining to this cause and the conduct of the parties and the testimony of the parties therein.

An affidavit was filed by such attorney in the district court on January 26, 1961, charging that relator had given false tes-

timony at the former hearing, held on August 16, 1960, and relator was cited to appear and show cause why she should not be held in contempt for perjury, committed by her at the previous hearing. The evidence introduced at the ensuing hearing on February 13, 1961, disclosed that relator stored the deep freeze with two friends in 1959. It remained in their possession until removed by relator at their request after they read newspaper accounts of the first contempt hearing. The relator did not testify, but through her attorney admitted in effect that her testimony given at the prior hearing was false, and she subsequently surrendered the deep freeze and other property in accordance with the earlier court order. After hearing the evidence, the respondent Honorable Harold Craik, Judge of the 153rd District Court of Tarrant County, Texas, found the relator guilty of contempt of court for having knowingly given false, perjured testimony under oath before the court in the hearing held on August 16, 1960, the court stating at the time that it would enter an order as to the punishment at a later date, within a day or two. At the conclusion of the hearing, the respondent orally ordered Alford J. Russell to prepare a formal brief and motion for rehearing to the Supreme Court in Ex parte Morris, 342 S.W. 2d 558, together with a copy of the statement of facts. The Supreme Court on March 1, 1961, overruled the motion for rehearing.

Thereafter, on May 5, 1961, the court rendered its judgment of contempt and entered it on May 26, 1961, against relator, said judgment reciting that relator is held in contempt for giving the false perjured testimony, and quoting:

"It is further ordered that the sum of $2500.00 being the investigation and processing expense of Alford J. Russell, an officer of this Court appointed for such purpose is hereby assessed as court costs against the defendant, Nina Ruth Elmore Morris, and further all costs of court incurred after the date of the judgment rendered May 5, 1960, and signed May 11, 1960, are also assessed against the defendant, Nina Ruth Elmore Morris, as court costs and *as punishment for her conduct as aforementioned;* it is ordered that the said Nina Ruth Elmore Morris is hereby fined $100.00 and court costs as aforementioned and sentenced to serve 3 days in jail for such contempt. It is further ordered that the said Nina Ruth Elmore Morris shall remain in jail from day to day and month to month thereafter until she shall pay the $100.00 fine and all costs of the court as aforesaid and the said Nina

Ruth Elmore Morris shall not be released from jail until she shall have purged herself completely by payment of the $100.00 fine and all costs of court and by serving 3 days in jail."

Relator was confined to jail on October 9, 1961, by the order of commitment on May 26, 1961, after relator had her second application to the Supreme Court rejected. The Supreme Court's ruling was that its original habeas corpus jurisdiction was limited (by Article 1737, V.A.R.C.S.) to cases in which a person has been confined for violating an order, judgment or decree in a civil case, the court stating that it was without power to inquire into the legality of restraint for some other reason.

Relator urges the following contention as error:

1. The District Court does not have the power to imprison for debt in the nature of a contempt proceeding.

2. The Court (meaning the district court) does not have the power to attach court costs in this type of case and imprison for debt for failure to pay the same.

3. Imprisonment for debt is in violation of the Constitution of the State of Texas, Article I, Section 18.

4. The Court has failed to use the remedies provided by law.

5. The subject matter in controversy before this Court is res judicata.

It is respondent's contention that this court should not accept jurisdiction of this case, and if it does accept jurisdiction that our acceptance should be limited to the question of whether or not the fine of $100.00 and 3 days in jail is proper under the facts. Respondent contends that we should not go into the question of whether or not the assessment of costs and attorney's fees are proper because such costs and attorney's fees accrued as a direct result of relator's refusal to obey the trial court's order to deliver the merchandise; respondent further contends that this phase of the case with reference to attorney's fees and costs is within the provisions of Article 1737, V.A.R.C.S., and that the Supreme Court has jurisdiction where a person is con-

fined for violating an order in a civil case. It is respondent's position or contention that since the Supreme Court dismissed relator's application for writ of habeas corpus at the previous hearing, 349 S.W. 2d 99, without prejudice the Supreme Court perhaps contemplated an additional hearing.

The respondent further says that the trial court's judgment of contempt against relator for committing perjury is valid, enforceable and appropriate under the circumstances and is fully supported by the law and the evidence and should be sustained in its entirety.

Without narrating in detail and attempting to reply to the respective contentions of relator and respondent, we think that the matter is properly before this Court for disposition. Section 5, Article V, the Constitution of Texas, vests original jurisdiction in this court in habeas corpus proceedings. It is clear to us that the Texas Supreme Court by its holding regarded the case as one beyond its jurisdiction because of Article 1737, V.A.R.C.S.

We further hold that the trial court's order of contempt is limited by the terms of Article 1911, V.A.R.C.S.: "The District Court may punish any person guilty of contempt of such court by a fine not exceeding $100.00 and by imprisonment not exceeding three days." We concede that a trial court may tax the costs incident to the actual contempt hearing and proceeding itself.

We do not think the trial court was vested with authority to allow an attorney a fee to investigate the contempt of relator and charge it against her as part of the punishment. We observe from the statement of facts relating to the hearing held on February 13, 1961, that the able trial judge was also of the opinion that this "was a matter for which they (the attorneys) could not be reimbursed by their clients. That is a duty of a lawyer as an officer of the Court, and for which he is not compensated by the Court." When the trial judge later requested an attorney to brief the question as to the court's authority to allow an attorney's fee, and the court did so, the court was without authority to allow a fee for such service and require its payment as part of the punishment for contempt. We further note that the respondent judge stated at this same hearing:

"I am going to take the matter of her punishment under

advisement for the time being. *I don't know whether this court should handle the matter, or it should be turned over to the grand jury.* I just haven't been able to make up my mind, so far. But I will render a decision sometime in the next day or two."

The court's decision was rendered on May 5, 1961, pursuant to the hearing held on February 13, 1961, at which time the trial judge imposed the aforementioned statutory maximum contempt punishment and also $2500.00 by way of attorney's fees, plus all costs incurred after the date of the judgment rendered May 5, 1960, stating in his order of May 5, 1961, that these costs were "also assessed against the defendant, Nina Ruth Elmore Morris, as court costs and as *punishment* for her conduct as aforementioned." We think the trial judge, the respondent, exceeded his authority by the allowance of attorney's fees and the taxing of same against the relator as part of the punishment for contempt. We have carefully examined all cases cited us by both parties in their briefs. It is elemental in criminal law that the provision of our State Constitution prohibiting imprisonment for debt has no application to criminal proceedings nor to imprisonment meted out as a punishment for violation of the law, and that costs accruing under crimnial prosecution and conviction are not a debt within the meaning of Article I, Section 18, Constitution of Texas, which provides: "No person shall ever be imprisoned for debt." See Ex parte Robertson, 27 Tex. Cr. Rep. 628, 11 S.W. 669; Ex parte Mann, 39 Tex. Cr. Rep. 491, 46 S.W. 828.

We agree with respondent that Rule 308-A, Texas Rules of Civil Procedure, provide for attorney's fees and allow the assessment of them as costs in a child support matter. We are also in accord with the holding of the Texas Supreme Court in Ex parte Helms, 259 S.W. 2d 184, that the confinement of a person for child support payment and attorney's fees was not in violation of the constitutional prohibition against imprisonment for debt. We also recognize the fact that the assessment of costs, including fees, is not exceptional under our practice in Texas. Provision is made in our various Rules of Civil Procedure for the taxing of costs in such things as Discovery, Master in Chancery, Auditor, etc. However, we are not here dealing with a case that comes within the terms of any of these various Rules of Civil Procedure. We have been cited no authority in point with the case at bar. Assuming that the trial judge had authority to allow the attorney a fee, which we do not concede, the

question then recurs: "Did the trial judge have the authority to tax attorney's fees as part of the costs and remand relator to jail until the $2500.00 attorney's fee costs, plus the other costs, were paid?" We think the answer is in the negative.

Since the trial judge clearly exceeded his authority in taxing the attorney's fees as costs in his Order of Contempt, the entire order is invalid. This being a collateral attack upon a judgment by habeas corpus, this court has no authority to reform the judgment. Accordingly, the Sheriff of Tarrant County is ordered to discharge the relator.

Having reached such conclusion, we find it unnecessary to pass upon the question of whether the matter in controversy was decided by the Texas Supreme Court and is therefore res judicata. We also find it unnecessary to determine whether the giving of false testimony in court constitutes contempt of court, as well as the felony offense of perjury.